UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

PHILIP D. STACEY,
    Plaintiff

vs

MICHAEL J. ASTRUE
COMMISSIONER OF SOCIAL SECURITY,
    Defendant

Case No. 1:08-cv-747
(Dlott, J.; Hogan, M.J.)

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying Plaintiff's application for Disability Insurance Benefits (DIB). This matter is before the Court on Plaintiff's Statement of Errors (Doc. 5), the Commissioner's response in opposition (Doc. 9), the administrative record, and the record as a whole.

## PROCEDURAL BACKGROUND

Plaintiff, Philip D. Stacy, was born on October 30, 1954, and was 53 years old at the time of the ALJ's decision. Plaintiff has a high school education (Tr. 86), and worked as a stock/paper and pulp machine operator. (Tr. 81). Plaintiff filed an application for DIB in June 2005, alleging disability beginning November 30, 2004, due to a back injury. (Tr. 74-78; 80). A hearing was held November 9, 2007, via video conference, before Administrative Law Judge (ALJ) John L. Mondi, who determined that Plaintiff was not disabled. (Tr. 19-25). The Appeals Counsel denied his request for review on August 27, 2008. (Tr. 5-8). Plaintiff sought judicial review of the Commissioner's decision.

In determining that Plaintiff was not disabled, ALJ Mondi found that Plaintiff has the severe impairments of hypertension and degenerative disc disease, for which he underwent a laminectomy in the past, but that he does not have an impairment or combination of impairments

that meets or equals the Listings. (Tr. 22). ALJ Mondi found Plaintiff has the Residual Functional Capacity (RFC) to perform a restricted, but substantial range of light work. *Id.* ALJ Mondi then found that Plaintiff was unable to perform his past relevant work as a paper and pulp machine operator. ALJ Mondi then used section 202.14 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and concluded that there is a significant number of jobs in the national economy that Plaintiff is capable of performing. (Tr. 24). ALJ Mondi concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. *Id.*

## PLAINTIFF'S TESTIMONY AT THE HEARING

The ALJ fairly summarized Plaintiff's testimony at the administrative hearing as follows:

> The claimant testified that he is 53 years old, married and has a high school education. He denied working after November 30, 2004. He had been doing heavy work until an on-the-job injury on November 21, 2002 which led eventually to back surgery on June 3, 2003. Subsequently, he returned first to "light" duty for maybe a monthly and then his regular job for three or four weeks before being let go. His light duty, which involved substituting for someone on vacation, required using a tape measure and standing less than 2 hours during the workday.
>
> The claimant testified that he is prevented from working by constant pain in his lower back and left leg. In addition to being status post left partial laminectomy at L3-4, he also is status post prostate cancer which, however, is not a current problem. Functionally, he is limited in standing to 15-20 minutes, in walking to less than a quarter block, in lifting to 5-10 pounds, and in climbing to maybe a short flight of stairs. He must move about when sitting and is limited in bending. He is unaware of side effects from his medications--Lopressor, Robaxin, Elavil, and Vicodin. He takes the Vicodin maybe once per day to help him sleep and has been doing so "off and on" for three years He also takes two "over the counter" Tylenol. He sees Dr. Curt Avery, the family physician, once every 6 months. His wife is disabled by a motor vehicle accident 10 years ago. Living with them is a son, a part-time construction worker, who helps out with

2

strenuous or heavy work. His son cuts the grass although he (claimant) may occasionally do so on a riding mower while taking his time. He and his wife shop together. He can drive short trips but riding longer than 20-30 minutes results in his back hurting.

Concerning activities, he spends the day mostly in bed or stretching out on the couch. He no longer fishes or hunts, other than for squirrels on property behind the house for maybe a half hour. He does no home maintenance. He does not spend much time on a computer as his back starts hurting after 10-15 minutes. His health insurance lapsed after he was released from work.

(Tr. 21-22).

## THE VOCATIONAL EXPERT AND THE HYPOTHETICAL QUESTION

The ALJ's hypothetical question to the VE assumed an individual who has the residual functional capacity to perform light-level work that did not require climbing ladders, ropes, or scaffolds. (Tr. 440-41). The VE responded that an individual of Plaintiff's age, education, and work history with those limitations could perform such light jobs as cashier (8,000 regional jobs), housekeeper (2,600 regional jobs) or machine operator (4,800 regional jobs). (Tr. 440).

## THE MEDICAL RECORD

Plaintiff had prior back surgery around 1990. (Tr. 166, 354). Plaintiff injured his back while working in November 2002. (Tr. 231). He underwent partial laminectomy surgery at L3-4 on his low back done by Lynn Robbins, M.D., an orthopaedic surgeon, in June 2003. (Tr. 164-66).

In February 2004, Plaintiff was evaluated by James A. Bruce, M.D., a pain specialist, who reported that the majority of Plaintiff's pain complaints were due to sacroiliitis and pain in the left sacroiliac joint, which is a common occurrence after major back operations because of changes in posture and gait. Upon approval of workers compensation, a trial of injections were recommended. (Tr. 210-11).

Dr. David Randolph, M.D., a specialist in occupational medicine, examined Plaintiff in connection with a workers' compensation claim in March 2004 and again in February 2005. (Tr. 225-30; 231-33; 234-41). In March 2004, Dr. Randolph opined that Plaintiff could perform sedentary work and lift a maximum of 10 pounds. (Tr. 240). In February 2005, Dr. Randolph found Plaintiff exhibited reduced ranges of lumbar motion, but normal gait and negative straight leg raising and diminished sensation of the left lateral calf. (Tr. 227). Dr. Randolph reviewed Plaintiff's medical records and concluded that they did not document an underlying impairment that would preclude Plaintiff from working. Dr. Randolph opined that Plaintiff's disability was related to degenerative disc disease, rather than to an industrial injury. (Tr. 229).

On December 2, 2004, Plaintiff complained of low back and leg pain to Kurt Avery, M.D., his family doctor. (Tr. 245). Examination revealed diminished left Achilles and patellar reflexes. *Id.* Dr. Avery referred Plaintiff to Dr. Robbins. *Id.* On December 21, 2004, Dr. Robbins found absent ankle jerks and recommended an MRI study. (Tr. 343).

An MRI of the lumbar spine taken on January 7, 2005, showed herniated disc at L1-2, which appeared little more pronounced and is somewhat eccentric to the right. The radiologists noted this is the only finding that might explain the right sided symptoms. (Tr. 342).

In January 2005, Plaintiff complained to Dr. Robbins of "some mild pain" down the front of both legs; Dr. Robbins recommended physical therapy. (Tr. 341). In May 2005, Plaintiff told Dr. Robbins that he thought he would try to return to work. (Tr. 340). On August 2, 2005, Dr. Robbins reported that Plaintiff had been terminated from employment because the company doctor felt he was "IME". Dr. Robbins opined that Plaintiff was unable to work and could sit for short periods and needed to change positions. He also could not walk long or lift much. (Tr. 370). Medical source statements from Dr. Robbins from September 15, 2005 and October 5, 2007 noted that Plaintiff was incapable of gainful employment. (Tr. 376, 397).

A state agency reviewing physician, Jerry McCloud, M.D., reviewed the medical evidence on August 19, 2005, and concluded that Plaintiff could perform light-level work. (Tr. 377-84). Dr. McCloud's opinion was affirmed by state agency reviewing physician, Elizabeth Das, M.D. on September 29, 2005. (Tr. 384).

Plaintiff was not seen by a physician again until May 2007, when he complained to Dr.

4

Avery of chronic pain. (Tr. 385A-91, 398-404).

## APPLICABLE LAW

The following principles of law control resolution of the issues raised in this case. Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938)). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hephner v. Mathews,* 574 F.2d 359 (6th Cir. 1978).

To qualify for DIB, plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. §§ 416(1), 423. Establishment of a disability is contingent upon two findings. First, plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, the impairments must render plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520. First, the Commissioner determines whether the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends. Second, if the individual is not currently engaged in substantial gainful activity, the Commissioner must determine whether the individual has a severe impairment or combination of impairments; if not, then a finding of nondisability is made and the inquiry ends. Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix I. If

the impairment meets or equals any within the Listing, disability is presumed and benefits are awarded. 20 C.F.R. § 404.1520(d). Fourth, if the individual's impairments do not meet or equal those in the Listing, the Commissioner must determine whether the impairments prevent the performance of the individual's regular previous employment. If the individual is unable to perform the relevant past work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show that there is work in the national economy which the individual can perform. *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048 (6th Cir. 1983); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524 (6th Cir. 1981), *cert. denied, 461 U.S. 957 (1983).*

"In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997). Likewise, a treating physician's opinion is entitled to weight substantially greater than that of a non-examining medical advisor. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048, 1054 (6th Cir. 1983). The weight given a treating physician's opinion on the nature and severity of impairments depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. § 404.1527(d); *Harris v. Heckler*, 756 F.2d 431 (6th Cir. 1985). However, a summary by an attending physician made over a period of time need not be accompanied by a description of the specific tests in order to be regarded as credible and substantial. *Cornett v. Califano,* No. C-1-78-433 (S.D. Ohio Feb. 7, 1979) (LEXIS, Genfed library, Dist. file). If a treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case," the opinion is entitled to controlling weight. 20 C.F.R. § 1527(d)(2); *see also Walters*, 127 F.3d at 530. If not contradicted by any substantial evidence, a treating physician's medical opinions and diagnoses are afforded complete deference. *Harris,* 756 F.2d at 435. *See also Cohen v. Secretary of H.H.S.*, 964 F.2d 524, 528 (6th Cir. 1992). However, a physician's statement that plaintiff is disabled is not determinative of the ultimate issue. *King v. Heckler,* 742 F.2d 968, 973 (6th Cir. 1984). The opinion of a non-examining physician is entitled to little weight if it is

6

contrary to the opinion of the claimant's treating physicians. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). If the ALJ rejects a treating physician's opinion, the ALJ's decision must be supported by a sufficient basis which is set forth in his decision. *Walter v. Commissioner*, 127 F.3d 525, 529 (6th Cir. 1997); *Shelman*, 821 F.2d at 321.

In *Price v. Heckler*, 767 F.2d 281, 284 (6th Cir. 1985) and *Hurst v. Secretary of H.H.S.*, 753 F.2d 517, 519 (6th Cir. 1985), the Sixth Circuit Court of Appeals cited with approval *Zblewski v. Schweiker*, 732 F.2d 75 (7th Cir. 1984), regarding the required specificity of an ALJ's findings of fact in a disability insurance case in order to facilitate meaningful judicial review. The Court in *Zblewski* stated:

> In the absence of an explicit and reasoned rejection of an entire line of evidence, the remaining evidence is "substantial" only when considered in isolation. It is more than merely "helpful" for the ALJ to articulate reasons (e.g., lack of credibility) for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review . . . [W]hen the ALJ fails to mention rejected evidence, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.

732 F.2d at 78-79. The specificity issue was also addressed in *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974), *cert. denied*, 420 U.S. 931 (1975):

> In our view an [ALJ's] findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision. This is necessary so that the court may properly exercise its responsibility under 42 U.S.C. § 405(g) to determine if the Commissioner's decision is supported by substantial evidence.

*Id.* at 312.

A severe impairment or combination of impairments is one which significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. §404.1520(c). Basic work activities relate to the abilities and aptitudes necessary to perform most jobs, such as the ability to perform physical functions, the capacity for seeing and hearing, and the ability to use judgment, respond to supervisors, and deal with changes in the work setting. 20 C.F.R. §404.1521(b).

7

Plaintiff is not required to establish total disability at this level of the evaluation. Rather, the severe impairment requirement is a threshold element which plaintiff must prove in order to establish disability within the meaning of the Act. *Gist v. Secretary of H.H.S.,* 736 F.2d 352, 357 (6th Cir. 1984). The severity requirement may be employed as an administrative convenience to screen out claims that are totally groundless solely from a medical standpoint. *Higgs v. Bowen,* No. 876189, slip op. at 4 (6th Cir. Oct. 28, 1988). An impairment will be considered non severe only if it is a "slight abnormality which has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience." *Farris v. Secretary of H.H.S.,*773 F.2d 85, 90 (6th Cir. 1985)(citing *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir. 1984)). The Secretary's decision on this issue must be supported by substantial evidence. *Mowery v. Heckler,* 771 F.2d 966 (6th Cir. 1985).

Plaintiff has the burden of establishing disability by a preponderance of the evidence. *Born v. Secretary of Health and Human Servs.,* 923 F.2d 1168, 1173 (6th Cir. 1990); *Bloch v. Richardson,* 438 F.2d 1181 (6th Cir. 1971). Once plaintiff establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that plaintiff can perform other substantial gainful employment and that such employment exists in the national economy. *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999); *Born,* 923 F.2d at 1173; *Allen v. Califano,* 613 F.2d 139 (6th Cir. 1980). To rebut a prima facie case, the Commissioner must come forward with particularized proof of plaintiff's individual capacity to perform alternate work considering plaintiff's age, education, and background, as well as the job requirements. *O'Banner v. Secretary of H.E.W.,* 587 F.2d 321, 323 (6th Cir. 1978). *See also Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir. 1984)(per curiam). Alternatively, in certain instances the Commissioner is entitled to rely on the medical-vocational guidelines (the "grid") to rebut plaintiff's prima facie case of disability. 20 C.F.R. Subpart P, Appendix 2; *O'Banner,* 587 F.2d at 323. *See also Cole v. Secretary of Health and Human Services,* 820 F.2d 768, 771 (6th Cir. 1987).

When the grid is not applicable, the Commissioner must make more than a generalized finding that work is available in the national economy; there must be "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform *specific* jobs."

*Richardson* v. *Secretary of H.H.S.,* 735 F.2d 962, 964 (6th Cir. 1984) (per curiam) (emphasis in original); *O'Banner* v. *Secretary of H.E.W.,* 587 F.2d 321, 323 (6th Cir. 1978). Taking notice of job availability and requirements is disfavored. *Kirk* v. *Secretary of H.H.S.,* 667 F.2d 524, 536-37 n.7, 540 n.9 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983). There must be more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *Richardson,* 735 F.2d at 964; *Kirk,* 667 F.2d at 536-37 n.7. The Commissioner is not permitted to equate the existence of certain work with plaintiff's capacity for such work on the basis of the Commissioner's own opinion. This crucial gap is bridged only through specific proof of plaintiff's individual capacity, as well as proof of the requirements of the relevant jobs. *Phillips* v. *Harris,* 488 F. Supp. 1161 (W.D. Va. 1980)(citing *Taylor* v. *Weinberger,* 512 F.2d 664 (4th Cir. 1975)). When the grid is inapplicable, the testimony of a vocational expert is required to show the availability of jobs that plaintiff can perform. *Born* v. *Secretary of H.H.S.,* 923 F.2d 1168, 1174 (6th Cir. 1990); *Varley* v. *Secretary of H.H.S.,* 820 F.2d 777, 779 (6th Cir. 1987).

The assumptions contained in an ALJ's hypothetical question to a vocational expert must be supported by some evidence in the record. *Hardaway* v. *Secretary of H.H.S.,* 823 F.2d 922, 927-28 (6th Cir. 1987). A proper hypothetical question should accurately describe plaintiff "in all significant, relevant respects; for a response to a hypothetical question to constitute substantial evidence, each element of the hypothetical must accurately describe the claimant." *Felisky* v. *Bowen,* 35 F.3d 1027, 1036 (6th Cir. 1994). *See also Varley* v. *Secretary of H.H.S.,* 820 F.2d 777, 779 (6th Cir. 1987). Where the evidence supports plaintiff's allegations of pain, a response to a hypothetical question that omits any consideration of plaintiff's pain and its effects is of "little if any evidentiary value." *Nos* v. *Weinberger,* 512 F.2d 588, 596 (6th Cir. 1975). However, "the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley* v. *Secretary of H.H.S.,* 39 F.3d 115, 118 (6th Cir. 1994).

The regulations expressly provide that the responsibility for deciding a claimant's residual functional capacity rests with the Administrative Law Judge when cases are decided at an administrative hearing. *Webb* v. *Commissioner of Social Security,* 368 F.3d 629, 633 (6th Cir. 2004)(citations omitted). [20 C.F.R. § 404.1546; § 404.1527(e)(2)].

9

Pain alone, if the result of a medical impairment, may be severe enough to constitute disability. *Kirk v. Secretary of H.H.S.* 667 F.2d 524, 538 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983). In order to find plaintiff disabled on the basis of pain alone, the Commissioner must first determine whether there is objective medical evidence of an underlying medical condition. If there is, the Commissioner must then determine: (1) whether the objective medical evidence confirms the severity of pain alleged by plaintiff; or (2) whether the underlying medical impairment is severe enough that it can reasonably be expected to produce the allegedly disabling pain. *Duncan v. Secretary of H.H.S.,* 801 F.2d 847, 852-53 (6th Cir. 1986). *See also Felisky v. Bowen,* 35 F.3d 1027, 1038-39 (6th Cir. 1994); *Jones v. Secretary of H.H.S.,* 945 F.2d 1365, 1369 (6th Cir. 1991). This test, however, "does not require ... 'objective evidence of the pain itself.'" *Duncan,* 801 F.2d at 853. Where a complaint of pain is not fully supported by objective medical findings, the Commissioner should consider the frequency and duration of pain, as well as other precipitating factors including the effect of the pain upon plaintiff's activities, the effect of plaintiff's medications and other treatments for pain, and the recorded observations of pain by plaintiff's physicians. *Felisky,* 35 F.3d at 1039-40.

Where the medical evidence is consistent, and supports plaintiff's complaints of the existence and severity of pain, the ALJ may not discredit plaintiff's testimony and deny benefits. *King v. Heckler,* 742 F.2d 968, 975 (6th Cir. 1984). Where, however, the medical evidence conflicts, and there is substantial evidence supporting and opposing a finding of disability, the Commissioner's resolution of the conflict will not be disturbed by the Court. *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983) (per curiam). In either event, the ALJ must articulate, on the record, his evaluation of the evidence and how it relates to the factors listed above. *Felisky,* 35 F.3d at 1039-41.

In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Kirk,* 667 F.2d at 538. "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky,* 35 F.3d at 1036. The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst v. Sec. of H.H.S.,* 753 F.2d 517, 519 (6th Cir. 1985)(citing

10

*Zblewski v. Schweiker,* 732 F.2d 75, 78 (7th Cir. 1984)).

**OPINION**

Plaintiff assigns three errors in this case. First, he argues the ALJ failed to properly weigh the opinion of treating physician, Dr. Robbins. Plaintiff contends the limitations offered by Dr. Randolph would limit him to sedentary work and therefore he would be found disabled under Grid Rule 201.14. Second, Plaintiff contends the ALJ erred by giving more weight to the opinion of Drs. McCloud and Das, non-examining state agency physicians, than to the assessment of Dr. Robbins. Third, Plaintiff argues the ALJ failed to consider Plaintiff's chronic complaints of pain in assessing his credibility. Finally, Plaintiff contends the ALJ relied on an improper hypothetical to the VE in determining Plaintiff is not disabled.

Plaintiff contends that the ALJ's errors in these regards mandate a reversal of the ALJ's decision for an award of benefits. For the reasons that follow, the Court finds the ALJ's decision is supported by substantial evidence and should be affirmed.

Plaintiff contends the ALJ should have accorded controlling weight to the RFC opinions of Dr. Robbins who reported Plaintiff was disabled in August and September 2005 and again in October 2007. Plaintiff contends that the ALJ ignored these opinions and failed to follow controlling Sixth Circuit law by not giving controlling weight or complete deference to the treating doctor's opinions.

Contrary to Plaintiff's contention, the ALJ did not ignore the opinions of the treating physician. The ALJ acknowledged that the treating physician reported an RFC of less than sedentary work, but specifically rejected Dr. Robbins[1] assessments as inconsistent with the objective evidence of record and not well supported. (Tr. 23). In determining Plaintiff's RFC, the ALJ relied on the assessments of state agency reviewing physicians, Drs. McCloud and Das, who determined Plaintiff was capable of a substantial range of light exertional level work. (Tr. 24).

The ALJ's decision in this regard is supported by substantial evidence. To be afforded

---

[1] In his decision, the ALJ refers to Dr. Robbins as Dr. "Roberts" (Tr. 23).

11

controlling weight, the opinion of a treating physician must be well-supported by medically acceptable clinical and laboratory diagnostic techniques, and must not be inconsistent with other substantial evidence in the record. *See Walters,* 127 F.3d at 530; 20 C.F.R. § 404.1527(d)(2). In weighing the opinions of the treating physician, the ALJ was required to consider factors such as the length, nature and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's supportability by evidence, and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6); *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004).

The ALJ's explanation of why he declined to fully accept Dr. Robbins' opinions was sufficient to show that he evaluated this physician's opinions under the required regulatory factors of supportability and consistency. (*See* Tr. 23). Although the ALJ's decision did not use these exact terms, the substance of his explanation regarding Dr. Robbins' opinions adequately addresses these factors. (Id.).

Plaintiff's reliance on certain objective medical testing, at most, shows only a conflict in the evidence, rather than an absence of substantial evidence supporting the ALJ's decision. Dr. Robbins' October 2007 opinion identifies the January 2005 MRI as supporting evidence. (*See* Tr. 397). The MRI of the lumbar spine from January 2005 showed a herniated disc at L5-S1. (Tr. 342). The ALJ, moreover, considered this objective evidence as indicated by his descriptions of the objective medical evidence. (*See* Tr. 23).

In addition, Dr. Randolph, who examined Plaintiff regarding his workers' compensation claim, reported that Dr. Robbins' treatment records "were insufficient to allow him any conclusion that any further treatment would be warranted..." (Tr. 225). Dr. Randolph continued, " His [Plaintiff's] absence from work was not clearly rationed in these records." (Id.). The record also reveals no further treatment from Dr. Robbins after August 2005.

Dr. McCloud reviewed the medical evidence in August 2005, and concluded that Plaintiff could perform light-level work. (Tr. 377-84). Dr. McCloud reported that despite Plaintiff's complaints and his history of back pain, he demonstrated good ranges of motion, ambulated with a normal gait, straight leg raising was negative, and motor strength testing yielded normal results. (Tr. 378). It was not error for the ALJ to credit the opinion of Dr.

McCloud. *See* S.S.R. 96-6p ("State agency medical and psychological consultant are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act.").

Plaintiff next argues that the ALJ erred by not finding him limited to sedentary work at age fifty and, in turn, by not finding him to be disabled pursuant to Grid Rule 201.14. This argument lacks merit because the ALJ's assessment of Plaintiff's RFC - finding him able to perform a limited range of light work - was supported by substantial evidence, particularly the opinions of Drs. McCloud and Das. As a result, the ALJ was not required to apply Grid Rule 201.14; it applies only to those age fifty who can only perform sedentary work. *See, Wright v. Massanari*, 321 F.3d 611,615 (6th Cir. 2003)(claimant's characteristics must exactly match the criteria in Grid Rules to trigger a disability finding).

Accordingly, Plaintiff's contentions concerning the ALJ's evaluation of the medical source opinions of record lack merit.

Plaintiff next asserts that there is objective medical evidence of significant pain which would limit him to sedentary work. Plaintiff asserts that the herniated disc at L1-2, the restricted motion of the low back and the reflex and sensory abnormalities support his subjective complaints of pain. (*See* Tr. 227). Plaintiff argues that the ALJ failed to cite activities which would show any ability to do light work for 40 hours a week under S.S.R. 96-8p (1996). Contrary to Plaintiff's contentions, substantial evidence supports the ALJ's credibility determination. In addition to the medical source opinions, the ALJ cited Plaintiff's objective medical record, his treatment, his medications and level of activity in finding his descriptions of pain to be less than fully credible. (*See* Tr. 23-24); *see also* 20 C.F.R. § 404.1529(c)(3). The ALJ further relied on the work Plaintiff performed after his alleged onset date, finding this as a reason to question the credibility of his testimony. (Tr. 23, 340, 370). "This Court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence exists when a "reasonable mind might accept" the relevant evidence "as adequate to support a conclusion." *Kirk v. Sec. of Health & Human Servs.*, 667 F.2d 524, 535

(6th Cir. 1981)(internal quotation marks omitted). As long as substantial evidence supports the Commissioner's decision, we must defer to it, "'even if there is substantial evidence in the record that would have supported an opposite conclusion . . . .'" *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003)(quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Lastly, Plaintiff contends that the ALJ's hypothetical questions to the vocational expert failed to include the RFC of Dr. Randolph and Dr. Robbins. This contention lacks merit because Plaintiff has not shown error in the ALJ's assessment of his residual functional capacity or his credibility. He, therefore, has not demonstrated any error in the ALJ's hypothetical questions. *See Stanley v. Secretary of HHS.*, 39 F.3d 115, 118 (6th Cir. 1994)("[T]he ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals."). In fashioning the hypothetical question to be posed to the vocational expert, the ALJ "is required to incorporate only those limitations accepted as credible by the finder of fact." *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1234-35 (6th Cir. 1993).

## CONCLUSION

Our duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker*, 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services*, 802 F.2d 839, 840 (6th Cir. 1986)(quoting, *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939)). The Commissioner's decision in this case is supported by such evidence.

Because substantial evidence supports the decision of the ALJ, we recommend that his decision be **AFFIRMED** and that this case be **DISMISSED** from the docket of the Court.

Date 2/18/10

Timothy S. Hogan
United States Magistrate Judge

14

## NOTICE TO THE PARTIES REGARDING THE FILING
## OF OBJECTIONS TO THIS R&R

Pursuant to Fed. R. Civ. P. 72(b), within fourteen (14) days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).

J:\Batten\Stacey.wpd